BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE SHEILA JAMES KUEHL, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
Is it a violation of the state's animal cruelty laws to conduct a "pigeon shoot" at which domestic pigeons are released from cages and shot for purposes of sport and amusement?
 CONCLUSION
It is a violation of the state's animal cruelty laws to conduct a "pigeon shoot" at which domestic pigeons are released from cages and shot for purposes of sport and amusement.
 ANALYSIS
The question presented for analysis concerns a "pigeon shoot" at which pigeons that are trapped in cities are released from cages in a remote area to be shot as part of a contest. An entry fee is paid by the contestants, and prizes are won depending upon how many pigeons a contestant is able to kill. An admission charge is collected from those wishing to view the event. The dead pigeons are not used for food, and the birds are not "game birds" shot during an officially sanctioned hunting season.
The pigeons captured for the pigeon shoot are domestic pigeons (Columba livia).[1] We are informed that the birds are transported to the pigeon shoot in unsanitary conditions and are not given food or water. Although the pigeons are disoriented and defenseless when released from their cages for purposes of being shot, a significant number of the pigeons are not immediately killed by the contestants. The organizers of the pigeon shoot provide no assistance to the wounded or maimed birds. Instead, wounded pigeons that are readily found are dispatched by various means.
We are asked to determine whether conducting a pigeon shoot in California would violate the state's animal cruelty laws (Pen. Code, §§ 597-597z).[2] As numerous other states have interpreted their animal cruelty laws, we conclude that conducting a pigeon shoot would constitute animal cruelty in California.
Subdivision (b) of section 597 provides:
 "Except as otherwise provided in subdivision (a) or (c), every person who overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, drink, or shelter, cruelly beats, mutilates, or cruelly kills any animal, or causes or procures any animal to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, drink, shelter, or to be cruelly beaten, mutilated, or cruelly killed; and whoever, having the charge of any animal, either as owner or otherwise, subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, or fails to provide the animal with proper food, drink or shelter or protection from the weather, or who drives, rides, or otherwise uses the animal when unfit for labor, is, for every such offense, guilty of a crime punishable as a misdemeanor or as a felony or alternatively punishable as a misdemeanor or a felony and by a fine of not more than twenty thousand dollars ($20,000).
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . "[3] (Italics added.)
Section 599b defines various terms used in the animal cruelty laws as follows:
 "In this title [§§ 594-625c] the word `animal' includes every dumb creature; the words `torment,' `torture,' and `cruelty' include every act, omission, or neglect whereby unnecessary or unjustifiable physical pain or suffering is caused or permitted. . . ."
In analyzing these statutory provisions, we rely upon well established principles of statutory construction. The fundamental rule is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382,387.) "The words of the statute are the starting point." (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 977.) "Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.]" (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735.) "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose. . . ." (Harris v. Capital Growth Investors XIV (1991)52 Cal.3d 1142, 1159; accord, California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 634.)
Applying these principles of statutory interpretation, we first note that the purpose of the animal cruelty laws is to protect animals from unnecessary harm. "The statutory scheme in sections 597 through597z reflects the state's concern for the protection of the health and well-being of animals." (Jett v. Municipal Court (1986)177 Cal.App.3d 664, 670.) In People v. Untiedt (1974) 42 Cal.App.3d 550,554, the court further explained:
 "Section 597f is found in a series of Penal Code sections consecutively numbered 597 through 597z. The obvious purpose of these statutes, q.v., is to prevent the active or passive infliction of unnecessary or unjustifiable pain or suffering, or cruelty, on animals by their owner, or keeper, or others. They are similar in scope and purpose to statutes found throughout the United States, which are commented upon by the editors of American Jurisprudence, Second, as follows: `The offense of cruelty to animals need not consist solely of active cruelty; passive cruelty — that is, omissions and neglect which cause or permit unnecessary or unjustifiable pain and suffering on the part of animals — is also ordinarily punishable under the statutes. The omissions and neglect which have been held to constitute cruelty consist primarily of failures by one having control or custody of an animal to do some act necessary for its well-being, as a failure to provide necessary sustenance, food, water, shelter, protection from the weather, or the like. . . .' (4 Am.Jur.2d, Animals, § 29, p. 280.)"
Examining the language of subdivision (b) of section 597, we find that a violation occurs when a person "subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, or fails to provide the animal with proper food, drink, or shelter. . . ." In common parlance, "cruelty" involves the infliction of pain or suffering in a wanton manner. (Webster's Third New Internat. Dict. (1971) p. 56.) For purposes of section 597, cruelty specifically includes "every act, omission, or neglect whereby unnecessary or unjustified physical pain or suffering is caused or permitted." (§ 599, subd. (b).)
In People v. Speegle (1997) 53 Cal.App.4th 1405, 1411, the court observed with respect to the language of subdivision (b) of section597:
 "`Although a particular statute is somewhat vague or general in its language because of difficulty in defining the subject matter with precision, it will be upheld if its meaning is reasonably ascertainable.' [Citation.] `It is not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas [with] adequate interpretation in common usage and understanding.' [Citations.] So long as the language embodies an objective concept, it is constitutionally concrete. [Citation.] There are an infinite number of ways in which the callously indifferent can subject animals in their care to conditions which make the humane cringe. It is thus impossible for the Legislature to catalogue every act which violates the statute. Nonetheless, the terms `necessary,' `needless,' and `proper' all give fair notice of an objective standard of reasonableness in the provision of sustenance, drink, and shelter, and in the avoidance of infliction of suffering. The notice component of due process does not require any more. [Citation.]"
In the landmark case of Waters v. The People (1896) 23 Colo. 33
[46 P. 112], the Colorado Supreme Court considered the lawfulness of a dove shoot similar to the circumstances presented herein. The court concluded:
 "In the North Carolina statute, like ours, the words `torment,' `torture' and `cruelty' include every act whereby unnecessary or unjustifiable pain or suffering is caused. The shooting of wild animals in the forest and fishing in the streams do not come within the statute. We have other laws covering these things, and they are permitted at certain seasons of the year. Every act that causes pain and suffering to animals is not prohibited. Where the end or object in view is reasonable and adequate, the act resulting in pain is, in the sense of the statute, necessary or justifiable, as where a surgical operation is performed to save life, or where the act is done to protect life or property, or to minister to some of the necessities of man. But the killing of captive doves, as they are released from a trap, merely to improve one's skill of marksmanship, or for sport and amusement, though there is no specific intention to inflict pain or torture, is, within the meaning of this act, unnecessary and unjustifiable. The same degree of skill may otherwise be readily acquired, and so there was no necessity for the shooting of these doves. Other rational sport and amusement are within easy access of the gentlemen of the Country Club, and so the avowed object of this shooting is neither adequate nor reasonable; hence, under this act, unjustifiable.
 "Where, as here, the acts charged are admittedly done, not to furnish food, but merely for the sport and amusement of the defendant and his associates, the facts clearly bring the case within the ban of the statute. In contemplation of this law, the pain and suffering caused by such acts are disproportionate to the end sought to be attained, and furnish no adequate or reasonable excuse for the acts which, to be necessary or justifiable, must be prompted by a worthy motive and a reasonable object." (Id., at pp. 39-40 [115].)
As in Waters, conducting a pigeon shoot subjects the pigeons to "needless" suffering, it inflicts "unnecessary" cruelty upon the birds, it "abuses" the pigeons, and it takes place after the contest organizers have failed to provide the birds "with proper food, drink, or shelter." (§ 597, subd. (b).)
No other statutory provisions require our analysis.[4] We conclude that it is a violation of the state's animal cruelty laws to conduct a pigeon shoot at which domestic pigeons are released from cages and shot for purposes of sport and amusement.
[1] "Pigeon" is an inclusive name for birds of the family Columbidae, a group which includes approximately 300 species. The domestic pigeon is distinct from the band-tailed pigeon (Columba fasciata), among others; the well known Antwerp or "homing" pigeon is a domesticated (trained to live around humans) pigeon that uses the sun and magnetic fields as directional aids. (Peterson, Peterson Field Guide: Western Birds (1990) pp. 208-210.)
[2] All references hereafter to the Penal Code are by section number only.
[3] Subdivision (a) of section 597 concerns one "who maliciously and intentionally maims, mutilates, tortures, or wounds a living animal" (see People v. Dunn (1974) 39 Cal.App.3d 418), and subdivision (c) of the statute concerns endangered or threatened species and fully protected animals, which categories do not include the domestic pigeon.
[4] Nothing contained in this opinion may be said to interfere "with any of the laws of this state known as the `game laws'. . . ." (§599c.)